**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01612-DDD-KLM

TIMOTHY BARLOW,
individually and on behalf of all others similarly situated,

      Plaintiff,

v.

WESTIN DIA OPERATOR, LLC,
a Delaware limited liability company,

      Defendant.

---

**JOINT MOTION TO CERTIFY CLASS FOR SETTLEMENT PURPOSES,
TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT,
AND TO AUTHORIZE NOTICE TO SETTLEMENT CLASS**

---

The Plaintiff, Timothy Barlow ("Barlow"), and the Defendant, Westin DIA Operator, LLC

("Westin DIA") ("the Parties"), by and through their respective counsel of record, hereby jointly

move the Court to certify the Settlement Class described herein, to preliminarily approve the

Parties' proposed class action settlement ("Settlement") contained in the Settlement Agreement

attached to this Motion as Exhibit 1, and to authorize notice to the Settlement Class. Pursuant to

D.C.COLO.LCivR 7.1(a), the undersigned counsel certify that this Motion is being filed

on behalf of all Parties.

## INTRODUCTION

This putative wage and hour class action centers around a currently unresolved issue of

Colorado law: whether mandatory service charges – such as those charged by Westin DIA to guests

1

and challenged by Barlow – are "tips" or "gratuities" under the Colorado Wage Act and its implementing regulations ("Colorado Wage and Hour Law").[1] As this Court recited in its December 2, 2020, Order, this question is "an open and potentially important one for Colorado law." ECF No. 36 at 11.

Barlow alleges that Westin DIA maintained a policy of paying its Service Express and In-Room Dining employees ("Settlement Class Members") a base wage rate that was less than Colorado's tipped minimum wage; paying the rest of their wages from "service charges" it received from Westin DIA guests; and retaining part of the service charges paid by guests for itself. Barlow alleges that: (1) the service charges were "tips" or "gratuities" under Colorado Wage and Hour Law; (2) Westin DIA was required to pay the Settlement Class Members the tipped minimum wage, and its alleged failure to do so violated Colorado Wage and Hour Law; and (3) Westin DIA was prohibited by Colorado law from retaining any part of the service charges paid by guests.

Westin DIA argues that it did not violate Colorado Wage and Hour Law in any respect, including because: (A) mandatory service charges paid by its guests were not "tips" or "gratuities" under Colorado Wage and Hour Law; (B) analogous federal law, including 29 C.F.R. § 531.52 and 29 C.F.R. § 531.55(a), persuasively demonstrate that mandatory service charges are not the same as "tips" or "gratuities;" (C) Westin DIA paid Barlow and the Settlement Class Members

---

[1] No Colorado court appears to have ruled on this issue. One Hearing Officer from the Colorado Department of Labor and Employment, Division of Labor Standards and Statistics ("Division"), has ruled that a service charge is not a "bona fide tip" if it is "mandatory." *See* ECF No. 28-3 at 3. That ruling has been appealed to the District Court for the City and County of Denver, where the Claimant filed briefs arguing that the Hearing Officer's ruling was inconsistent with Colorado law and should be reversed, and where the Division filed a brief arguing that the Hearing Officer's ruling was consistent with Colorado law and should be affirmed. *See* Ex. 2 (DLSS Brief); Ex. 3 (Claimant Reply Brief).

base wages that, in combination with other compensation, always met or exceeded the applicable minimum wage and/or tipped minimum wage; and (C) Westin DIA's policies and practices regarding service charges were entirely legal under both federal law and Colorado Wage and Hour Law.

The Parties have agreed to settle the Plaintiff's and the Settlement Class Members' claims in exchange for a total settlement payment of $47,500.00 by Westin DIA and Westin DIA's agreement that, in conjunction with 2021 bargaining over potential renewal of and/or changes to the applicable collective bargaining agreement ("CBA") with its employees' union, Westin DIA will bargain in good faith regarding the base wage provided for Service Express and/or In-Room Dining employees in that CBA. As described below, the Court should certify the Settlement Class for settlement purposes because the Class satisfies the prerequisites and requirements of Fed. R. Civ. P. 23. The Court should preliminarily approve the Settlement because it is "fair, reasonable, and adequate" under the standards applicable in the Tenth Circuit. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The Court should also approve the notice and opt-out forms attached as Exhibits 4 and 5 and authorize the Settlement Administrator to send those forms to the Settlement Class Members.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    SUMMARY OF THE LITIGATION

On May 1, 2020, Barlow initiated this action by filing a Complaint in Colorado state court alleging that Westin DIA violated Colorado Wage and Hour Law by: (1) paying Barlow and the

other Settlement Class Members[2] a base wage rate that was less than the applicable minimum wage and/or tipped minimum wage; and (2) retaining part of service charges paid by Westin DIA guests, which Barlow alleged were "tips" or "gratuities" under Colorado Wage and Hour Law. *See* ECF No. 1-3.

Approximately 39 individuals worked for Westin DIA as Service Express and/or In-Room Dining employees during the period relevant to this action - namely, May 1, 2018, to February 10, 2021, and are thus potential Settlement Class Members.[3]

Westin DIA removed the case to this Court and filed a Motion to Dismiss asserting that Barlow's claims were preempted by Section 301 the Labor Management Relations Act, 29 U.S.C. § 185(c) ("LMRA"), because they would require the interpretation of a CBA between Westin DIA and Unite Here Local 23 ("the Union"). *See* ECF No. 14. Barlow responded to the Motion to Dismiss and also filed a motion asking the Court to certify a central legal question in this case to the Colorado Supreme Court – namely, whether "service charges" can be considered "tips" or "gratuities" under Colorado Wage and Hour Law. *See* ECF Nos. 18 and 19.

On December 2, 2020, the Court entered its Order Denying Defendant's Motion to Dismiss and Denying Plaintiff's Motion to Certify. *See* ECF No. 36.  In denying Barlow's motion to certify

---

[2] Barlow originally sought to represent all "bellhops, luggage handlers, servers, banquet servers, and room service personnel." ECF No. 1-3 at ¶ 22. Based on the information produced in discovery and in the litigation of the various motions in this case, however, the undersigned counsel for Barlow now believes that the servers and banquet servers at Westin DIA were subject to policies/practices that were somewhat different from Barlow's and the other Settlement Class Members' such that certification of just the bellhops and baggage handlers ("Service Express") and room-service ("In-Room Dining") employees is appropriate.

[3] This class size estimate is subject to confirmation prior to the final calculation and distribution of the settlement payments.

his proposed legal question to the Colorado Supreme Court, the Court held that answering the

question was "not necessary to resolve any pending motion or matter before the court," and stated:

> At this point, it does appear that the question is an open and potentially important one for Colorado law, but the court questions whether Mr. Barlow has shown it is a close enough issue to warrant certification given the common sense distinction between "tips" and "service charges," and the persuasive federal authority cited by Westin.

*Id*. at 11.

The Parties are aware of no statute, rule, or regulation addressing the service charges

question under Colorado law. Nor does it appear that any District Court, Division of the Colorado

Court of Appeals, or the Colorado Supreme Court has addressed the question. As Westin DIA

pointed out in its briefing in opposition to Barlow's proposed certification of a question of law,

one Hearing Officer from the Colorado Department of Labor and Employment has issued a ruling

that "service charges" at the Broadmoor Hotel were not "bona fide tips" because they were

"mandatory." *See* ECF No. 28-3 at 3; *see also* Ex. 2 (DLSS Brief) at 15-19 (Division arguing

that the Hearing Officer's decision should be affirmed). However, Barlow's counsel[4]

contends that the Hearing Officer issued that ruling without engaging in any analysis, without

citing any law, rule, or regulation, and without providing any reasoning for her position. *See* Ex. 3

(Claimant Reply) at 14-24. As such, Barlow contends that there remains a dearth of any binding

authority on the issue in the State of Colorado.

The Parties engaged in written discovery and a Rule 30(b)(6) deposition of Westin DIA.

Concurrently, the Parties' counsel held in-depth conversations about the possibilities of resolving

---

[4] Barlow's counsel in this case is also counsel for the Claimant in the Broadmoor Hotel case.

the case, which resulted in the Settlement reflected in the Settlement Agreement attached to this

Motion as Exhibit 1. Barlow has agreed to the Settlement based on the risk and delay associated

with "serious questions of law" that place the outcome of this litigation in doubt. *See Pliego v.*

*Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (outlining

factors to be determined in deciding whether to approve class action settlement). Westin

DIA has entered into the Settlement without admitting any wrongdoing or liability and

for the sole purpose of avoiding the cost of continuing litigation.

## II.     SUMMARY OF THE PROPOSED SETTLEMENT

### A.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

The Parties stipulate that the following Settlement Class should be certified for

the purposes of effectuating the Settlement:

> All employees who worked at the Westin Denver International
> Airport hotel as Service Express and/or In-Room Dining employees
> between May 1, 2018, and February 10, 2021.

The Parties also stipulate to the appointment of Barlow as the Class

Representative, and the attorneys at the Sawaya & Miller Law Firm as Class Counsel.

### B.   RELIEF TO SETTLEMENT CLASS MEMBERS

Under the Parties' proposed Settlement Agreement: (1) Westin DIA will pay a

total settlement payment of $47,500.00 to resolve the Settlement Class Members' claims

that were brought or could have been brought in this action; (2) Westin DIA will

compensate the Settlement Administrator for administering the settlement with funds

separate and apart from this $47,500.00 settlement consideration; and (3) Westin DIA

will, in conjunction with 2021 bargaining over potential renewal of and/or changes to the

applicable CBA with its employees' union, bargain in good faith regarding the base wage provided for Service Express and/or In-Room Dining employees in that CBA.

The total settlement payment will be distributed to the approximately 39 Settlement Class Members pro rata in proportion to the number of relevant hours (both regular and overtime) that each Settlement Class Member worked as a Service Express and/or In-Room Dining employee during Defendant's pay periods encompassing May 1, 2018, through February 10, 2021. The Parties anticipate that, after attorney's fees and costs, and a Service Award to Barlow, each Settlement Class Member will be paid approximately $0.56 for each relevant hour (both regular and overtime) that they worked during the relevant period. Class Counsel plans to seek attorneys' fees and costs of approximately 1/3 of the total settlement payment, and a Service Award of $5,000.00 to Barlow for his time, efforts, and personal risk undertaken on behalf of the Settlement Class Members.

### C. PROPOSED NOTICE, EXCLUSION, AND OBJECTION PROCEDURES

Westin DIA will retain Rust Consulting, LLC, to serve as Settlement Administrator. Rust Consulting is a highly regarded, nationwide class action settlement company with extensive experience administering wage and hour class actions. Westin DIA has agreed to pay Rust Consulting's fees directly, as opposed to deducting those fees from the total settlement amount.

The Parties have jointly drafted the Notice and Opt-Out forms ("Notices") filed as Exhibits 4 and 5 to this Motion to send to the Settlement Class Members.

Subject to the Court's approval, the Parties anticipate that notice will proceed as follows:

(1) Within thirty (30) days after the Court's preliminary approval of the Parties' proposed Settlement, Westin DIA will provide the Settlement Administrator with a list of all members of the proposed Settlement Class, including, to the extent reasonably available, their full names, last known home addresses, last known telephone numbers, last known email addresses, and last four digits of their Social Security Numbers;

(2) The Settlement Administrator will mail the Notices approved by the Court to all Settlement Class Members within 14 days of receiving Westin DIA's list described above, and will additionally email these Notices to all Settlement Class Members for whom personal email addresses are known;

(3) The Settlement Class Members will have 60 days from the date on which the Notices are sent to opt out of, object to, or remain in the Settlement. Instructions on how to opt out or object are contained in the attached Notices;

(4) The Settlement Administrator will conduct skip tracing and other efforts in conformity with the standards of the class administration industry to locate any Settlement Class Members whose Notices are returned as undeliverable;

(5) The Settlement Administrator will perform a second mailing of the Notices to any Settlement Class Member whose Notices were initially returned as undeliverable, and for whom an alternate address was located through its skip tracing and other efforts;

(6) Within 30 days after the end of the 60-day notice period, the Parties will file a joint motion seeking final approval of the Settlement; and

(7) The Parties will attend a Final Fairness Hearing on a date determined by the Court, and included in the Notices to the Settlement Class Members.

A proposed Order reflecting these procedures has been filed with this Motion.

## DISCUSSION

## 1.  REQUEST TO CERTIFY CLASS FOR SETTLEMENT PURPOSES

A class may be certified where the prerequisites and requirements of Rule 23 have been met. The prerequisites for a class action under Rule 23(a) are that:

>  (1)   the class is so numerous that joinder of all members is impracticable;

>  (2)   there are questions of law or fact common to the class;

>  (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

>  (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The requirements for a class action under Rule 23(b) are that the prerequisites for a class action are met, and that:

>  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

>  (C) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(D) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## A. THE SETTLEMENT CLASS SATISFIES THE PREREQUISITES OF RULE 23(A).[5]

### 1. NUMEROSITY

Rule 23(a) requires that the putative class membership be sufficiently large to warrant a class action, because the alternative of joinder is impracticable. Fed. R. Civ. P. 23(a)(1). "In determining whether a proposed Class meets the numerosity requirement a court may make 'common sense assumptions to support a finding that joinder would be impracticable.'" *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002); *see e.g. Decohen v. Abbasi, LLC,* 299 F.R.D. 469, 477 (D. Md. 2014) (noting that "classes with as few as 25 to 30 members have been found to raise the presumption that joinder would be impracticable") (internal quotation marks omitted).

In this case, there are approximately 39 Settlement Class Members. Because joinder of that many plaintiffs would be impracticable, the first prerequisite is satisfied.

### 2. COMMONALITY

Rule 23(a) also requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This does not require every issue to be common among each and

---

[5] Westin DIA stipulates to certification of the proposed Settlement Class for purposes of the Parties' proposed Settlement only, but reserves the right to oppose certification of this or any other class in the event the Court does not approve the parties' proposed Settlement. Barlow agrees that if the Settlement is not approved following the Final Fairness Hearing or if settlement is not perfected for any other reason, nothing in this Motion shall be cited in this or any other proceeding as alleged precedent estopping Westin DIA from opposing certification of the Parties' proposed or any other plaintiff class.

every class member. *Joseph v. Gen. Motors Corp.,* 109 F.R.D. 635, 639 (D. Colo. 1986). "It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory." *Id.* at 639-40 (quoting *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975)).

There are numerous, important questions that are common to the Settlement Class Members, including but not limited to: (1) whether the service charges are "tips" or "gratuities" under Colorado Wage and Hour Law; (2) whether the Settlement Class Members are "tipped employees" under Colorado Wage and Hour Law; (3) whether Westin DIA appropriately paid the Settlement Class Members the applicable minimum wage and/or tipped minimum wage; and (4) whether Westin DIA retained part of service charges paid by guests in violation of Colorado Wage and Hour Law. In light of these questions, the second prerequisite of Rule 23(a) is met.

### 3.  TYPICALITY

Rule 23(a) requires that the claims or defenses of the representative party be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical if it challenges the same conduct that would be challenged by the class. *In re Qwest Savings and Investment Plan ERISA Litigation,* No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at 14-15 (D. Colo. Sept. 24, 2004). Differing fact patterns do not defeat typicality under the Rule so long as the claims of the class representative and the claims of the class members are based on the same legal or remedial theory. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988).

In this case, Barlow was subject to the same policies/practices that he challenges on behalf of the Class, i.e., the receipt of a base wage that he contends was less than the applicable minimum wage and/or tipped minimum wage. He is therefore typical of the Settlement Class Members, and the third prerequisite is satisfied.

### 4. ADEQUACY

Rule 23(a) requires that a plaintiff representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To some extent, the typicality and adequacy issues overlap. *Devora v. Strodtman*, 282 P.3d 528, 534 (Colo. App. 2012) (citing *Tucker v. BP Am. Prod. Co.*, 278 F.R.D. 646, 655 (W.D. Okla. 2011)). However, the most important factors are whether the class representative has any interest antagonistic to the interests of the other class members and whether the representatives have an interest in vigorously pursuing the class claims. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (adequacy inquiry serves to uncover conflicts between named parties and the class they seek to represent).

"Absent evidence to the contrary, a presumption of adequate representation is invoked," and "[a]ny doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration." *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 552 (D. Colo. 1988).

Barlow and Class Counsel do not have any interests that are antagonistic to the Settlement Class. They have vigorously litigated this action, and will continue to protect the Class Members' interests through final approval and distribution of the Settlement. Accordingly, the fourth prerequisite of Rule 23(a) is met.

**A. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3)**

In addition to meeting the requirements of Rule 23(a), in order to obtain the Court's approval for a proposed class action settlement, the Parties must demonstrate that the settlement meets the qualifications of one of the forms of class action described in Rule 23(b). In this case, the Plaintiff asks the Court to find that the Settlement Class meets the requirements of Rule 23(b)(3), because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The matters pertinent to a finding under Rule 23(b)(3) include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

In ruling on predominance under Rule 23(b)(3), the Court should determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members. *Pliego*, 313 F.R.D. at 127 (quoting *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012)). Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject to only individualized proof. *Id.* (quoting *United Food*, 281 F.R.D. at 655).

As mentioned above, there are numerous legal and factual issues that are common to the Settlement Class Members. These issues predominate over any issues affecting individual Class Members. Moreover, the undersigned are unaware of any Settlement Class Member having any interest in controlling the prosecution of a separate action, or having done so. Concentrating litigation in this class action is desirable because it allows each of the Settlement Class Members to obtain wage payments that would probably not merit individual civil litigations, and to benefit from the efficiencies of class discovery. Additionally, the undersigned counsel are unaware of any special difficulties in managing this case as a class action. Accordingly, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied in this case.

Because the prerequisites and requirements for a class action under Fed. R. Civ. P. 23 are satisfied, the Court should certify the Settlement Class for the purposes of the Settlement, appoint Barlow as the Class Representative, and appoint the attorneys from the Sawaya & Miller Law Firm as Class Counsel.[6]

---

[6] The undersigned attorneys for Barlow have a great deal of experience in handling wage and hour class actions, having litigated more than 30 such cases, including: *Leyvas v. Sage Dentistry*, No. 18CV333524 (Den. Dist. Ct.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile*, No. 2020CV030841 (Den. Dist. Ct.);; *Williams v. Sabell's,* No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University,* No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC,* No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v. Devereux Cleo Wallace,* No. 2017CV30319 (Jefferson Dist. Ct.); *Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club,* No. 2015CV30354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC,* No. 2015CV30175 (Den. Co. Dist. Ct.); *Ingve v. Fresenius Med. Care Dialysis*

## 2.    REQUEST TO PRELIMINARILY APPROVE SETTLEMENT

To be valid, a class action settlement must be approved by the court. Fed. R. Civ.

P. 23(e). The review and approval of a class action settlement is undertaken in three steps:

(1) preliminary approval of the proposed settlement after submission of a written motion

for preliminary approval, the proposed class settlement, and the proposed class notice;

(2) dissemination of mailed notice of the settlement to all affected settlement class

members; and (3) a formal fairness hearing or final settlement approval hearing, at which

time class members may be heard regarding the settlement, and at which time evidence

and argument concerning the fairness, adequacy and reasonableness of the settlement may

be presented. *Pliego*, 313 F.R.D. at 125.

The object of preliminary approval is for the Court to determine whether notice of

the proposed settlement should be sent to the class, and not to make a final determination

of the settlement's fairness. *Id.* at 128. Accordingly, the standard that governs the

preliminary approval inquiry is less demanding than the standard that applies at the final

approval phase. *Id.*; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)

("The purpose of the preliminary approval process is to determine whether there is any

reason not to notify the class members of the proposed settlement and to proceed with a

fairness hearing.").

---

*Servs. Colorado, LLC,* No. 2014CV32468 (Den. Co. Dist. Ct.); *Ortez v. United Parcel Service,* No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary,* No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures,* LLC, No. 16-cv-00070 (D. Colo.); *Dominguez v. Wilson Roofing Division,* LLC, No. 16-cv-00177 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC,* No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.).

Courts often consider the following factors in deciding whether to give preliminary approval to a settlement: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Pliego*, 313 F.R.D. at 128 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). All four factors are satisfied here.

### A.  THE SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED.

The Settlement was fairly and honestly negotiated. *See* 313 F.R.D. at 128; *Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues"). Barlow and Westin DIA have vigorously litigated the issues of LMRA preemption, whether service charges are "tips" or "gratuities" under Colorado law, and the appropriateness of certifying this question to the Colorado Supreme Court. They engaged in a meaningful exchange of information through written discovery and a Rule 30(b)(6) deposition. The Parties' counsel engaged in extensive, careful arms-length negotiations.

### B.  THE PARTIES AGREE THAT THE SETTLEMENT IS FAIR AND REASONABLE.

As reflected in their Settlement Agreement, Barlow, Class Counsel, and Westin DIA agree that the Settlement, which will provide for a payment of approximately $0.56

to be paid to each Settlement Class Member for each relevant hour (both regular and overtime) that they worked for Westin DIA during the relevant period, is fair and reasonable. Class Counsel's assessment in this regard is "entitled to considerable weight." *See Lucas*, 234 F.R.D. at 695. The reasonableness of the Settlement must be considered in light of the unresolved legal issues at the center of this action and the risk that this litigation could result in little or no recovery for the Settlement Class Members, which are discussed below.

**C. SERIOUS QUESTIONS OF LAW AND FACT PLACE THE ULTIMATE OUTCOME IN DOUBT.**

In analyzing the third factor from *Rutter*, the Court must determine whether the Parties could reasonably conclude that serious questions of law and fact exist; this does not, however, require the Court to evaluate the actual merits of the case. *See Lucas*, 234 F.R.D. at 693-94.

In this case, a central question is whether Westin DIA's service charges were "tips" or "gratuities," and, more broadly, whether "service charges" can be considered to be tips or gratuities under Colorado Wage and Hour Law. As this Court has recognized, that broader question is "an open and potentially important one for Colorado law." ECF No. 36 at 11. Additional legal and factual questions that place the outcome of this case in doubt include: (1) whether Barlow and the Settlement Class Members were "tipped employees" under Colorado law; (2) whether Westin DIA was permitted to retain any part of service charges paid by guests under Colorado law; (3) whether Westin DIA appropriately paid Barlow and the Settlement Class Members the applicable minimum wage and/or tipped minimum wage; (4) whether Westin DIA willfully violated Colorado Wage and Hour Law in any respect; (5) what damages, if any, Barlow

and the Settlement Class Members could claim for Westin DIA's alleged violations of Colorado law; (6) whether, in the absence of the Parties' stipulation for the purposes of the Settlement, Barlow could satisfy the prerequisites of Fed. R. Civ. P. 23; and (7) whether, in the absence of the Parties' stipulation for the purposes of the Settlement, Barlow could establish that common questions predominate over individualized issues. All of these issues reflect serious questions of law and fact that place the outcome of this case in doubt.

### D. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief.

"[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted).

As discussed throughout this Motion, a central legal issue in this case is unanswered under Colorado law. The risk that the issue could eventually be decided in favor of Westin DIA is a serious one. The only written decision in Colorado that either Party could find on the issue of service charges was and is the Division Hearing Officer's ruling that service charges are not tips if they are "mandatory" – a position that Barlow believes is patently wrong and that his counsel has challenged. *See* Ex. 3 (Claimant Reply) (arguing that "mandatory" nature of payments is one of many factors analyzed by courts). It is likely that this issue could remain unanswered by the Colorado Supreme Court for a long time, as the Hearing Officer's decision is appealed through the state court system. The Settlement Class Members also risk the possibilities that: (1) they might be unable to establish the appropriateness of class certification under Rule 23 in the absence of the

Parties' stipulations; (2) they might not prevail on a dispositive motion; (3) they might obtain little or no damages from a jury after a trial on the merits; and (4) Westin DIA might prevail upon appeal with respect to arguments it has preserved in this proceeding, including its arguments regarding LMRA preemption.

In light of these legitimate risks of litigation, the value of the Settlement, which will allow each Settlement Class Member to be paid approximately $0.56 for each relevant hour (both regular and overtime) that they worked is fair and reasonable.

Because the Settlement was fairly and honestly negotiated; because the Parties judge the Settlement to be fair and reasonable; because serious questions of law and fact place the ultimate outcome of the litigation in doubt; and because the value of an immediate recovery outweighs the possibility of future relief, this Court should preliminarily approve the Settlement. *See Pliego*, 313 F.R.D. at 128; *Rutter*, 314 F.3d at 1188.

**3.  REQUEST TO AUTHORIZE NOTICE TO THE SETTLEMENT CLASS**

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). For classes certified under Rule 23(b)(3), like the Settlement Class in this case:

> [t]he notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The hallmark of the notice inquiry is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted); *see Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The proposed Notices filed as Exhibits 4 and 5 to this Motion, and the notice, exclusion, and objection procedures proposed in Part II(C) above, satisfy the standards for reasonable notice applied by this Court. Accordingly, the Parties respectfully ask that the Court authorize notice to be sent to the Settlement Class Members using the Parties' forms and proposed processes.

## CONCLUSION

For all of the reasons set forth above, the Plaintiff and the Defendant respectfully ask the Court to:

1.    Certify the following Settlement Class for settlement purposes:

All employees who worked at the Westin Denver International Airport hotel as Service Express and/or In-Room Dining employees between May 1, 2018, and February 10, 2021.

2.    Appoint Timothy Barlow as the Class Representative;

20

3.      Appoint the undersigned attorneys from the Sawaya & Miller Law Firm as Class Counsel;

4.      Approve the Notice and Opt-out Forms attached as Exhibits 4 and 5 to be sent to the Settlement Class Members;

5.      Approve Rust Consulting, LLC, as Settlement Administrator;

6.      Authorize notice to the Settlement Class and order that:

A.  The Settlement Administrator shall mail and email the Notices approved by the Court to all Settlement Class Members within 14 days of the Settlement Administrator's receipt of a list of all members of the Settlement Class, including, to the extent reasonably available, their full names, last known home addresses, last known telephone numbers, last known email addresses, and last four digits of their Social Security Numbers;[7]

B.  The Settlement Class Members shall have 60 days from the date on which the Notices are sent to opt out of, object to, or remain in the Settlement;

C.  The Settlement Administrator shall conduct skip tracing and other efforts in conformity with the standards of the class administration industry to locate any Settlement Class Members whose Notices are returned as undeliverable;

D.  The Settlement Administrator shall perform a second mailing of the Notices to any Settlement Class Member whose Notices were initially returned as

---

[7] As recited in the Parties' proposed Settlement Agreement, Westin DIA will provide this list to the Settlement Administrator within 30 days of the Court's preliminary approval of this Settlement.

undeliverable, and for whom an alternate address was located through its skip

tracing and other efforts;

7.    Order the Parties to file a joint motion seeking final approval of the Settlement no

later than 30 after the termination of the notice period; and

8.    Schedule a final fairness hearing to occur no earlier than 45 days after the end of

the notice period.

A proposed Order is submitted herewith and an editable copy of the same in Word

format be will emailed to Judge Domenico's chambers pursuant to DDD Civ. P.S. I(E).

Respectfully submitted on this 15th day of April, 2021.

| | |
|---|---|
| */s/ Adam M. Harrison* | */s/ Bradford J. Williams* |
| _____ | _____ |
| David H. Miller | Bradford J. Williams |
| Adam M. Harrison | Steven Gutierrez |
| THE SAWAYA & MILLER LAW FIRM | HOLLAND & HART, LLP |
| 1600 Ogden Street | 555 17th Street, Suite 3200 |
| Denver, Colorado 80218 | Denver, Colorado 80202 |
| 303.839.1650 | 303.295.8121 |
| aharrison@sawayalaw.com | bjwilliams@hollandhart.com |
| | |
| *Counsel for the Plaintiff* | *Counsel for the Defendant* |

**CERTIFICATE OF COMPLIANCE WITH APPLICABLE TYPE-VOLUME
LIMITATIONS**

I hereby certify that the foregoing pleading complies with the type-volume

limitation set forth Judge Domenico's Order dated April 15, 2021.  *See* ECF No. 50.

*/s/ Bradford J. Williams*
_____
Bradford J. Williams

## CERTIFICATE OF SERVICE

I certify that on this 15th day of April, 2021, I electronically filed the foregoing Motion through the CM/ECF System, generating a true and accurate copy of this document to all counsel of record.

*/s/ Bradford J. Williams*

_____

Bradford J. Williams

16576126_1