# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 20-cv-01612-RMR-KLM**

**TIMOTHY BARLOW,**
**individually and on behalf of all others similarly situated,**

      **Plaintiff,**

**v.**

**WESTIN DIA OPERATOR, LLC,**
**a Delaware limited liability company,**

      **Defendant.**

---

**JOINT MOTION SEEKING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, SERVICE AWARDS, ATTORNEYS' FEES, COSTS, AND COSTS OF ADMINISTRATION AND AUTHORIZATION TO DISTRIBUTE THE CLASS SETTLEMENT AMOUNT**

---

The Plaintiff, Timothy Barlow ("Barlow"), and the Defendant, Westin DIA Operator, LLC ("Westin DIA") ("the Parties"), through their respective counsel of record, hereby jointly move the Court to grant final approval of the Settlement Class, grant final approval of the $47,500.00 Settlement reflected in their Settlement Agreement, the Service Awards contemplated by the Settlement Agreement, the Plaintiff's attorneys' fees and costs, and the costs of administering the Settlement, and to authorize the Settlement Administrator to distribute the Class Settlement Amount. Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel certify that this Motion is being filed on behalf of all Parties.

1

## **INTRODUCTION**

On October 20, 2021, the Court granted the Parties Joint Motion to Certify Settlement Class for Settlement Purposes, to Preliminarily Approve the Class Action Settlement, and to Authorize Notice to the Settlement Class ("Preliminary Approval Motion"), which preliminarily approved of the Parties; certified the Plaintiff Class for the purposes of the Settlement; appointed Barlow as the Class Representative; appointed David H. Miller and Adam M. Harrison[1] as Class Counsel; approved Rust Consulting, LLC ("Rust") as the Settlement Administrator; and authorized the Settlement Administrator to distribute notice to the putative Settlement Class Members. In the Court's Order granting the Preliminary Approval Motion, the Court certified the following class for settlement purposes only:

> All individuals who worked for Westin DIA as Service Express employees and/or In-Room Dining employees between May 1, 2018 and February 10, 2021.

The Settlement Administrator sent the Notices approved by the Court to the Settlement Class Members and performed all of its duties in accordance with the Court's Order. Ex. 1: Declaration of Abigail Schwartz for Rust Consulting, Inc. ("Rust Decl."), *infra.* The Administrator mailed the Notices to 39 Settlement Class Members, emailed the Notices to 33 Settlement Class Members, and engaged in diligent efforts to find new addresses and re-send the Notices to Members whose Notices were returned undeliverable. Because of these efforts, all but three of the Settlement Class Members received notice of the Settlement. No Members opted out, and no Members objected to the Settlement. *Id.*

---

[1] Adam M. Harrison filed his Motion to Withdraw as Plaintiff's Attorney on May 27, 2021, after the Preliminary Approval Motion was filed, and the Court granted the motion the same day. On August 16, 2021, below-referenced counsel Victoria Guzman entered her appearance for plaintiff. ECF Doc. 55.

The Court should grant final approval of the Settlement Class and approve the Settlement because it is "fair, reasonable, and adequate" under the standards applicable in the Tenth Circuit. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The Settlement was fairly and honestly negotiated at arm's length between counsel who zealously and diligently represented their clients. Serious questions of law and fact were at issue, including but not limited to the issue of whether Westin DIA's practice of retaining a portion of the "services charges" paid by customers violated Colorado wage and hour law and whether such a practice resulted in the failure to pay minimum wages to all Settlement Class Members. Each Settlement Class Member stands to receive $0.56 for each hour that they worked for Westin DIA during the statutory period applicable to their claims to compensate them for minimum wages and services charges that the Plaintiff alleges were not properly paid pursuant to Colorado wage and hour law.  In light of the complexity and risks inherent in this case—including the significant risk that the Settlement Class Members could obtain zero recovery—and based on the extensive information exchanged and reviewed by the Parties over the course of the last year and a half, Class Counsel maintain that such payments are fair, reasonable, and adequate.

The Court should also approve the Service Awards contemplated by the Settlement: $5,000.00 to Timothy Barlow for his efforts and the risk he undertook, on behalf of the Settlement Class Members. This amount is well within the range of service awards that courts have held to be reasonable in similar cases. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (finding that "'reasonable incentive payments' have become common for class representatives," and that a "$5,000 incentive award is comparatively

on the lower end of awards deemed reasonable"); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009–10 (D. Colo. 2014) (approving $15,000 service award).

The Court should also approve the Plaintiff's attorneys' fees and costs as they are also reasonable. Under the Colorado Wage Act, a prevailing party is presumptively entitled to her or his reasonable attorney's fees and costs. *Lester v. Career Bldg. Acad.*, 2014 COA 88, ¶ 29, 338 P.3d 1054, 1060 (Colo. App. 2014). Despite this, Class Counsel agreed to be paid 33% of settlement amount as compensation for both attorney's fees and costs. Not counting costs, 33% of the settlement amount is reasonable to compensate attorney's fees alone. *See Lucken Fam. Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5–6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). Not including their time spent on this Motion and preparing for the Final Fairness Hearing, Class Counsel spent more than 110 hours bringing this case to a successful conclusion. Under the lodestar approach, Class Counsel would be entitled to more than $48,500.00 for their work. *See* Declaration of David H. Miller, Exhibit 2, ¶ 10 and Exhibit 4, *passim.* Instead of seeking that amount, and to maximize the recovery obtained by the Settlement Class Members, Class Counsel is seeking only $15,675.00—33% of the Total Settlement Amount. Additionally, Plaintiff's attorney's costs amount to an additional $1,096.45, but Class Counsel agreed to the $15,675.00 amount as compensation for both attorney's fees and costs in the Settlement Agreement.

Finally, the Court should approve Rust's administration costs, totaling $6,831.00, pursuant to the Parties' Settlement Agreement. *See* Ex. 1, ¶ 17.

4

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**I.     SUMMARY OF THE LITIGATION**

On May 1, 2020, Barlow initiated this action by filing a Complaint in Colorado state court alleging that Westin DIA violated Colorado Wage and Hour Law by: (1) paying Barlow and the other Settlement Class Members[2] a base wage rate that was less than the Colorado minimum wage and/or tipped minimum wage; and (2) retaining part of the services charges paid by Westin DIA guests, which Barlow alleged were "tips" or "gratuities" under Colorado Wage and Hour Law. *See* ECF No. 1-3.

Approximately 39 individuals worked for Westin DIA as Service Express and/or In-Room Dining employees during the period relevant to this action, May 1, 2018 to February 10, 2021, and are thus potential Settlement Class Members.

Westin DIA removed the case to this Court and filed a Motion to Dismiss asserting that Barlow's claims were preempted by Section 301 the Labor Management Relations Act, 29 U.S.C. § 185(c) ("LMRA"), because they would require the interpretation of a collective bargaining agreement between Westin DIA and Unite Here Local 23 ("the Union"). *See* ECF No. 14. Barlow responded to the Motion to Dismiss and also filed a motion asking the Court to certify the central

---

[2] Barlow originally sought to represent all "bellhops, luggage handlers, servers, banquet servers, and room service personnel." ECF No. 1-3 ¶ 22. Based on the information produced in discovery and in the litigation of the various motions in this case, however, the undersigned counsel for Barlow now believes that the servers and banquet servers at Westin DIA were subject to policies/practices that were somewhat different than Barlow and the other Settlement Class Members, so that certification of just the bellhops and baggage handlers ("Service Express" employees) and room-service ("In-Room Dining") employees is appropriate.

legal question in this case – whether "service charges" can be considered "tips" or "gratuities"

under Colorado Wage and Hour law. *See* ECF Nos. 18 and 19.

On December 2, 2020, the Court entered its Order Denying Defendant's Motion to Dismiss

and Denying Plaintiff's Motion to Certify. ECF No. 36.  In denying Barlow's motion to certify his

proposed legal question to the Colorado Supreme Court, the Court held that answering the question

was "not necessary to resolve any pending motion or matter before the court," and stated:

> At this point, it does appear that the question is an open and potentially important
> one for Colorado law, but the court questions whether Mr. Barlow has shown it is
> a close enough issue to warrant certification given the common sense distinction
> between "tips" and "service charges," and the persuasive federal authority cited by
> Westin.

*Id.* at 11.

The Parties are aware of no statute, rule, or regulation addressing the service charges

question in Colorado law. Nor does it appear that any District Court, Division of the Colorado

Court of Appeals, or the Colorado Supreme Court has addressed the question. As Westin DIA

pointed out in its briefing in opposition to Barlow's proposed certification of a question of law,

one Hearing Officer from the Colorado Department of Labor and Employment issued a ruling that

"service charges" at the Broadmoor Hotel were not "bona fide tips" because they were

"mandatory." *See* ECF No. 28-3; *see also* ECF No. 51-2 at 15–19 (Division arguing that the

Hearing Officer's decision should be affirmed). However, Barlow's counsel[3] contends that

the Hearing Officer issued that ruling without engaging in any analysis, without citing any law,

rule, or regulation, and without providing any reasoning for her position. *See* ECF No. 51-3 at 14–

---

[3] Barlow's counsel in this case is also counsel for the Claimant in the Broadmoor Hotel
case which is now pending on appeal in the Colorado Court of Appeals. *Brennan v.
Broadmoor Hotel Inc.,* No. 2021CA2057.

24. As such, Barlow contends that there remains a dearth of any binding authority on the issue in the State of Colorado.

The Parties engaged in written discovery and a Rule 30(b)(6) deposition of Westin DIA. Concurrently, the Parties' counsel held in-depth conversations about the possibilities for resolving the case, which resulted in the Settlement at issue. Doc. 51-1. Barlow has agreed to the Settlement based on the risk and delay associated with the "serious questions of law" that place the outcome of this litigation in doubt. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (outlining factors to be determined in deciding whether to approve class action settlement). Westin DIA has entered into the Settlement without admitting any wrongdoing or liability and for the sole purpose of avoiding the cost of continuing litigation.

## II.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.  RELIEF TO SETTLEMENT CLASS MEMBERS

Under the Parties' proposed Settlement Agreement: (1) Westin DIA will pay a total settlement payment of $47,500.00 to resolve the Settlement Class Members' claims that were brought or could have been brought in this action; (2) Westin DIA will compensate the Settlement Administrator for administering the settlement with funds separate and apart from the $47,500.00 settlement amount; and (3) Westin DIA was to bargain in good faith regarding the base wage provided for Service Express and/ or In-Room Dining employees in conjunction with 2021 bargaining over potential renewal of and/or changes to the applicable CBA with its employees' union. *See* ECF No. 51-1 at 11–17.

The total settlement payment will be distributed to the 39 Settlement Class Members pro rata in proportion to the number of relevant hours (both regular and overtime) that each Settlement Class Member worked as a Service Express and/or In-Room Dining employee during Defendant's pay periods encompassing May 1, 2018, through February 10, 2021. The Parties anticipate that, after attorney's fees and costs, and a Service Award to Barlow, each Settlement Class Member will be paid approximately $0.56 for each relevant hour (both regular and overtime) that they worked during the relevant period. Class Counsel plans to seek attorneys' fees and costs of 33.00% of the total settlement payment, and a Service Award of $5,000.00 to Barlow for his time, efforts, and personal risk undertaken on behalf of the Settlement Class Members.

### III.    SUMMARY OF NOTICE TO SETTLEMENT CLASS MEMBERS

On October 20, 2021, the Court approved the Notice and Opt-out forms ("Notices") proposed in the Preliminary Approval Motion and authorized Rust to send the Notices to the Settlement Class Members during a 60-day notice period. ECF No. 57. The Notices set out: (1) the terms of the Settlement; (2) the steps Class Members needed to take to participate in, opt out of, or object to the Settlement; (3) the date, time, and location of the Final Fairness Hearing, and how Class Members might participate in the Hearing if they chose to do so; and (4) how Class Members could obtain more information about the Settlement. *See* ECF No 51-4.

In accordance with the Court's Order, Rust sent 39 Notices on December 3, 2021, via U.S.P.S. First Class Mail. Ex. 1, ¶ 8. The Settlement Administrator then conducted extensive skip tracing and repeatedly re-sent Notices that were returned undeliverable

throughout the 60-day notice period. Rust additionally sent 33 Notices on January 21, 2022, via email. In total, at least 36 of the 39 potential Settlement Class Members received the Notices. *Id.* at ¶¶ 9-16.

The Final Fairness Hearing in this matter is scheduled for April 14, 2022, at 10:00 a.m. MST. in Courtroom A 701 of the Alfred A. Arraj United States Courthouse.

## **DISCUSSION**

## I.    **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT CLASS**

As explained in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 51), the proposed Settlement Class satisfies the prerequisites and requirements of Fed. R. Civ. P. 23 because: (1) the Class of 39 Settlement Class Members is so numerous that joinder of all members is impracticable; (2) Barlow's allegations that the Settlement Class Members were not properly paid their tips or minimum wages raise legal questions that are common to the Members of the Settlement Class; (3) Barlow alleges that he was subject to the policy/ practice that resulted in a base wage that he contends was less than the applicable minimum and/or tipped minimum wage, making him typical of the Class; (4) Barlow and his counsel have adequately represented the Settlement Class; and (5) issues common to the Settlement Class predominate over questions affecting only individual Class Members and a class action is the superior method of adjudicating the controversy enunciated in Barlow's Complaint. *See* ECF No. 51 at 10–14; Fed. R. Civ. P. 23(a); 23(b)(3). Under these circumstances, granting final approval of the Settlement Class is appropriate.

## II.  **THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT**

### A.    **STANDARD OF REVIEW**

To approve a class settlement, a court must determine that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Tenth Circuit Court of Appeals has held that the trial court should consider the following four factors to determine whether a settlement is "fair, reasonable and adequate:"

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188 (citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). "The court has broad discretion in deciding whether to grant approval of a class action settlement." *Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Tr.*, No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008) (citing *Jones*, 741 F.2d at 324). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones*, 741 F.2d at 324.

## B.    THE SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED

The Court should approve the Settlement because it was fairly and honestly negotiated. *See* 313 F.R.D. at 128; *Lucken*, 2010 WL 2650037, at *3 (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues"); *Rutter*, 314 F.3d at 1188; *In re Qwest Commc'ns Int'l, Inc. Sec.*

*Litig.*, 625 F. Supp. 2d 1133, 1137–38 (D. Colo. 2009) (approving settlement where "each of the parties [was] represented by competent seasoned attorneys who conducted [the] litigation vigorously and professionally," the parties engaged in substantial discovery, and there was "no indication that any of the negotiating parties unfairly was pressured or coerced into agreeing to the settlement"); *see also Ashley*, 2008 WL 384579 at *5 (holding that in analyzing this factor, a court must "ensure that the agreement is not illegal, a product of collusion, or against the public interest").

The Settlement was fairly and honestly negotiated. The proposed Settlement will provide each Settlement Class Member with $0.56 for each hour that they worked for Westin DIA during the statutory period applicable to their claims to compensate them for minimum wages and services charges that the Plaintiff alleges were not properly paid pursuant to Colorado wage and hour law. Barlow and Westin DIA have vigorously litigated the issues of LMRA presumption, whether service charges can be considered "gratuities" under Colorado law, and the appropriateness of certifying this important, open question to the Colorado Supreme Court. The terms of the Settlement were negotiated at arms' length by competent counsel who vigorously advocated for their clients throughout this litigation and who engaged in substantial discovery before the Settlement was reached. Class Counsel believes, based on their own independent investigation, analysis, and the discovery performed in this case, that $0.56 of pay for every hour worked represents the best recovery for the Settlement Class Members. No party was unfairly "pressured or coerced into agreeing to the settlement." *See In re Qwest*, 625 F. Supp. 2d at 1138. There has been no collusion or illegality, and the Settlement is

not against public interest. *See Ashley*, 2008 WL 384579 at *5. Under these circumstances, the first factor from *Rutter* weighs in favor of approving the Settlement.

### C.    SERIOUS QUESTIONS OF LAW AND FACT PLACE THE ULTIMATE OUTCOME IN DOUBT

The Court should also approve the Settlement because serious questions of law and fact place the ultimate outcome of the litigation in doubt. *See Rutter*, 314 F.3d at 1188. "The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *See In re Qwest*, 625 F. Supp. 2d at 1138 (holding that "[t]he risk that a jury would deny recovery to the plaintiffs is substantial. The settlement creates a certainty of some recovery").

In this case, the central question is whether Westin DIA's Service Charges were "gratuities," and, more broadly, whether "service charges" can be considered to be gratuities, under Colorado Wage and Hour Law. As this Court has recognized, that broader question is "an open and potentially important one for Colorado law." ECF No. 36 at 11. Additional legal and factual questions that place the outcome of this case in doubt include: (1) whether Barlow and the Settlement Class Members were "tipped employees" under Colorado law; (2) whether Westin DIA was permitted to take any part of the Service Charges under Colorado law; (3) whether Westin DIA appropriately paid Barlow and the Settlement Class Members the Colorado minimum wage; (4) whether Westin DIA appropriately paid Barlow and the Settlement Class Members Colorado's tipped minimum wage; (5) whether Westin DIA's conduct constituted willful violations of Colorado Wage and Hour Law; (6) what damages, if any, Barlow and the Settlement

Class Members could claim for Westin's alleged violations of Colorado law; (7) whether, in the absence of the Parties' stipulation for the purposes of the Settlement, Barlow could satisfy the prerequisites of Fed. R. Civ. P. 23; and (8) whether, in the absence of the Parties' stipulation for the purposes of the Settlement, Barlow could establish that common questions predominate over individualized issues. All of these issues present serious questions of law and fact that place the outcome of this case in doubt. As such, the second factor from *Rutter* weighs in favor of approving the Settlement.

### D. THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF.

The Court should approve the Settlement because the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *See Rutter*, 314 F.3d at 1188. "The value of an immediate recovery" means "the monetary worth of the settlement." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861 at *3 (D. Colo. Apr. 22, 2015). "[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted).

As discussed throughout this Motion, the central legal issue in this case is unanswered under Colorado law. The risk that the issue could eventually be decided in favor of Westin DIA is a serious one. The only written decision that either Party could find on the issue of Service Charges was and is the Division Hearing Officer's ruling that service charges are not tips if they are "mandatory"—a position that has been challenged

and that Barlow believes is patently wrong. *See* ECF No. 51-3 (arguing that "mandatory" nature of payments is one of many factors analyzed by courts). It is likely that this issue could remain unanswered by the Colorado Supreme Court for a long time, as the Hearing Officer's decision is appealed through the state court system. The Settlement Class Members also risk the possibilities that: (1) they might be unable to establish the appropriateness of class certification under Rule 23 in the absence of the Parties' stipulations; (2) they might not prevail on a dispositive motion; and (3) they might obtain little or no damages from a jury after a trial on the merits. The reasonableness of the Settlement must be considered in light of the unresolved legal issues at the center of this action and the risk that this litigation could result in little or no recovery for the Settlement Class Members. Under these circumstances, the value of the Settlement far outweighs the mere possibility that the Settlement Class Members could obtain a better result after further expensive litigation. *See Rutter*, 314 F.3d at 1188. The third factor from *Rutter* therefore weighs in favor of approving the Settlement.

### E.    THE PARTIES AGREE THAT THE SETTLEMENT IS FAIR AND REASONABLE

Finally, the Court should approve the Settlement because the Parties judge it to be fair and reasonable. *See In re Qwest*, 625 F. Supp. 2d at 1138 ("Obviously, it is the judgment of lead counsel, who specialize in this type of litigation, that the settlement is fair and reasonable. That judgment is entitled to some weight in considering this factor").

Class Counsel from the Sawaya Law Firm are experienced litigators who specialize in wage and hour class actions.[4] They have fully analyzed and evaluated the claims of Barlow and the Settlement Class Members, the information exchanged by the Parties in discovery, the depositions of the Parties and Shona Ploussard, the arguments in Westin DIA's pleadings and briefs, and the risks of litigation. In light of the legitimate risks of litigation, discussed above, the value of the Settlement, which will allow each Settlement Class Member to be paid $0.56 for each hour that they worked is considerable. Based on the entirety of the information before them, Class Counsel believe that the relief accorded to each Settlement Class Member is the best recovery, and that it is therefore fair, reasonable, adequate, and equitable.

---

[4] The undersigned attorneys for Barlow have a great deal of experience in handling wage and hour class actions, having litigated more than 30 such cases, including: *Devereux Cleo Wallace,* 492 P.3d 1059 (Colo.App. 2021); *Gonzalez v. Schnell,* No. 20-cv-00303-CMA-SKC (D.Colo.); *Garechana v. Summit Subway, LLC,* No. 2019CV032622 (El Paso Co. Dist. Ct. 2020); *Leyvas v. Sage Dentistry*, No. 18CV333524 (Den. Dist. Ct.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile*, No. 2020CV030841 (Den. Dist. Ct.); *Williams v. Sabell's*, No. 2019CV031879 (Jefferson Dist. Ct.); *Banton v. Board of Governors of the Colorado State University*, No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC*, No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v.*; *Crepeau v. PDQ Truck, LLC*, 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club*, No. 2015CV30354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC*, No. 2015CV30175 (Den. Co. Dist. Ct.); *Ingve v. Fresenius Med. Care Dialysis Servs. Colorado, LLC*, No. 2014CV32468 (Den. Dist. Ct.); *Ortez v. United Parcel Service*, No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary*, No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures, LLC*, No. 16-cv-00070 (D. Colo.); *Dominguez v. Wilson Roofing Division, LLC*, No. 16-cv-00177 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC*, No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.*, No. 14-cv-0090 (D. Colo.).

Class Counsel's judgment that the Settlement is in the best interest of the
Settlement Class Members is entitled to some weight. *See In re Qwest*, 625 F. Supp. 2d
at 1138. Notably, not one of the 39 Settlement Class Members has objected to the
Settlement. *See Ashley*, 2018 WL 384579, at *8 (finding that it was "noteworthy" when
no individual objects to settlement). While Westin DIA continues to deny any and all
allegations of wrongdoing and disclaiming any and all liability with respect the claims
made in this action, the Defendant does not disagree that the proposed settlement is fair
and reasonable resolution of the claims alleged by Barlow. As such, the fourth factor
from *Rutter* weighs in favor of final approval.

## III.    THE NOTICE TO THE SETTLEMENT CLASS WAS PROPER

Fed. R. Civ. P. 23(e)(1)(B) requires "direct notice in a reasonable manner to all
class members who would be bound" by a class action settlement. Notice is satisfactory
if it "adequately apprised putative class members of the nature of the claims at issue[,]"
accurately explained the consequence of the decision to not opt out, and "informed
putative class members how to obtain more information about the settlement . . . ." *Elna
Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir. 2020), *cert.
denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (Nov. 16, 2020) (quoting
*Tennile v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015)).

On October 20, 2021, the Court approved the Notices and notice protocol proposed
in the parties' Joint Motion for Preliminary Approval of Class Action Settlement and
Class Certification for Settlement Purposes, Authorizing Notice to Settlement Class, and
Appointing Class Counsel and Class Representative. ECF No. 57. The Notice of Class

Action Settlement approved by the Court "included all requisite information about the action and the class" and "properly identified opt-out procedures and the effect of class judgment." ECF No. 57 at 15. The Notice and an Opt-out Form were mailed to each of the 39 Settlement Class Members on December 3, 2021. The Settlement Class Members had 60 days to investigate, confer with the Settlement Administrator and/or Class Counsel regarding any questions, opt out of the Settlement, or file an objection to the terms of the Settlement. The Notice and an Opt-Out Forms were emailed to 33 of the 39 Settlement Class Members on January 21, 2022, with the instruction to contact the Settlement Administrator if they had not received a mailed copy of the Notice and Opt-Out Form. The Settlement Administrator additionally engaged in extensive batch tracing in order to remail notices that were returned as undeliverable. No Settlement Class Member opted out or filed an objection. Because notice was provided to the Settlement Class Members in a reasonable manner, the requirements of Fed. R. Civ. P. 23(e)(1)(B) have been satisfied. Rust Declaration, Exhibit 1, ¶¶ 7-16.

## IV.    THE SERVICE AWARD REQUESTED IS REASONABLE AND SHOULD BE APPROVED

"[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) (citations omitted*); Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (finding that "'reasonable incentive payments' have become common for class representatives," and that a "$5,000 incentive award is comparatively on the lower end of awards deemed reasonable"). "[I]ncentive awards are an efficient and productive way to encourage members of a

17

class to become class representatives, and to reward the efforts they make on behalf of the class."
*Lucken*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010). "[S]uch awards are particularly appropriate in the employment context," where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers*." Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

Courts generally consider the following factors in reviewing a service award: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Id.*; *Thompson*, 2018 WL 2183988, at *3. A service award should be "proportional to the contribution of the plaintiff." *Chieftain Royalty*, 888 F.3d at 468 (citation omitted).

Timothy Barlow contacted Class Counsel to bring this case in 2020. Since that time, he has continuously provided Class Counsel with important information that has been essential to the case. He spent dozens of hours assisting Class Counsel to prepare motions and responses to motions, preparing and reviewing discovery responses, and engaging in settlement negotiations. Due to his ongoing employment at Westin DIA, Barlow took personal risks to be a class representative. Because of his efforts over the past almost 2 years, all of the Settlement Class Members have the opportunity to be paid under the Settlement. Because these benefits to the Settlement Class Members are significant, and based on the significant time, effort, and risk that Barlow undertook, the Service Award contemplated by the Settlement Agreement—$5,000.00 to Barlow—is reasonable and should be approved. *Thompson*, 2018 WL 2183988, at *3.

18

## V.    THE PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

Class counsel who obtains a common fund settlement for a class is entitled to recover reasonable attorneys' fees paid from the fund. *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (holding that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). "Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created." *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) (*citing Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)); *cf. See Lucken*, 2010 WL 5387559, at *2. "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund 'is less subjective than the lodestar plus multiplier approach,' matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis . . . ." *Lucken*, 2010 WL 5387559, at *2 (citing *Brown*, 838 F.2d at 454 and *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir.1993)).

The "lodestar" —a court-approved reasonable rate multiplied by the reasonable number of hours spent, plus any appropriate multiplier—is often used by this Court as a "crosscheck" on the reasonableness of the percentage being charged by class counsel. *See e.g. Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015); *Lucken*, 2010 WL 5387559, at *3.

In addition, the Tenth Circuit Court of Appeals requires district courts to consider the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.* in reviewing the reasonableness of the percentage of the common fund awarded to class counsel. These factors include:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee [i.e., whether the fee was fixed or contingent]; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown*, 838 F.2d at 454–55 (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

## A. THE PERCENTAGE OF THE COMMON FUND REQUESTED IS REASONABLE

Barlow entered into a 1/3 contingency-fee representation agreement with Class Counsel. Ex. 2: Miller Decl. ¶ 10. Such an agreement is the most commonly encountered fee arrangement in similar class actions. *See Lucken*, 2010 WL 5387559, at *5–6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *cf. Vaszlavik*, 2000 WL 1268824, at *4 (finding that 30% award was "presumptively reasonable"); *see generally*, Elaine Buckbert, Todd Foster, Ronald Miller, and Stephanie Plancich, *Recent Trends in Class Action Litigation: Bear Market Cases Bring Big Settlement*, pp. 9-10 n. 5 (NERA Feb. 2005) (finding that in 40% of cases, the fees requested were 33%). By taking the case on contingency, Class Counsel took the significant risk that they would recover nothing if Barlow did not prevail. *See Vaszlavik*, 2000 WL 1268824 at 6. As such, Class Counsel's request for 33% of the Class Settlement Amount of $47,500.00, totaling $15,675.00, is reasonable.

## B. THE LODESTAR "CROSSCHECK" SUPPORTS CLASS COUNSEL'S REQUEST

### 1. CLASS COUNSEL'S RATE

The reasonable hourly rate is reflected in the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

Class Counsel submits that the prevailing rate for David H. Miller, an employment attorney with more than 40 years of experience, is $650 per hour. Ex. 3: Greisen Decl.; Ex. 5: Miller Resume. The prevailing rate for Adam M. Harrison, an employment attorney with more than 10 years of experience, is $450 per hour. Motion for Attorney's Fees and Docket containing Minute Order Granting Attorney's Fees in federal case, *Barrett v. Vita Locators, LLC*, No. 20-cv-01868 (approving an hourly rate of $450.00 for Adam Harrison in a similar class action in federal court on December 9, 2021). Class Counsel further submit that they are entitled to a rate of $195 per hour for the work of 1st year associate Victoria Guzman (admitted to the Colorado Bar in October, 2020, and $150 per hour for the work of paralegal Leroy Moya during the notice period. *See* Declaration of David H. Miller, Exhibit 2, ¶ 9.

Under the lodestar approach, Class Counsel would be entitled to more than $48,500.00 for the more than 110 hours they worked on this case. Because the fees sought by Class Counsel, $15,675.00, are significantly below their lodestar, the Court should grant their request for reasonable attorneys' fees.

## 2.    CLASS COUNSEL'S HOURS

As stated previously, Class Counsel has worked more than 110 hours on this case over the past almost 2 year period. A true and accurate record of their hours, which was

kept contemporaneously with the hours worked, is attached to this Motion. Ex. 4: Sawaya Billing Records. These hours do not include all of the hours worked by Class Counsel in drafting this Motion and preparing for the Final Fairness Hearing (12 hours or more).

As reflected in Class Counsel's billing records, Class Counsel's work on this case included: (a) conducting initial and follow-up interviews with the Plaintiff; (b) investigating Westin DIA and its policies and practices; (c) researching state and federal wage and hour laws and regulations; (d) drafting pleadings, motions, and responses and replies to motions; (e) meetings with clients and litigation team; (f) engaging in thorough written discovery related to class certification under Rule 23; (g) assisting clients with written discovery propounded by Westin DIA; (h) engaging in settlement negotiations; (i) drafting and revising Notices; (j) revising Settlement Agreement and Waivers; (k) retaining Rust as Settlement Administrator; (l) drafting, revising, and filing Preliminary Motion; (m) assisting Settlement Administrator and answering Settlement Class Member inquiries during the notice period; and (n) preparing for the Final Fairness Hearing. All of this work was necessary to the case, and essential to bringing this complex case to a successful conclusion. As a review of Class Counsel's billing records will reveal, the hours spent by Class Counsel in this case were reasonable. Nevertheless, instead of requesting payment for all of their time Class Counsel requests that they simply be paid $15,675.00.

### C.   CLASS COUNSEL'S FEES ARE REASONABLE UNDER THE *JOHNSON* FACTORS

#### 1.   THE TIME AND LABOR INVOLVED

Class counsel expended more than 110 hours in bringing this case to a successful settlement. Ex. 4: Sawaya Billing Records. Class Counsel's hours included, among other things: reviewing hundreds of pages of documents from Plaintiffs and Defendants; interviewing numerous witnesses; drafting and responding to motions; litigating the issue of services charges; preparing for and participating in lengthy negotiations with Defendants and Plaintiff Barlow to arrive at the Settlement; and assisting in providing notice to the Class. *See id.*; *see also* Ex. 2 at ¶ 7. Because Class Counsel "made a significant time investment in this case," the first factor supports Class Counsel's requested fees. *See Shaw*, 2015 WL 1867861, at *5.

## 2. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS PRESENTED

As discussed above, the central question in this case was whether Westin DIA's "service charges" qualified as tips under Colorado Wage and Hour law. Such a question has yet to be determined by any Colorado court, and the only source of interpretation of this issue comes from a Hearing Officer decision that is currently pending appeal before the Colorado Court of Appeals. The Court acknowledged that "it does appear that the question [regarding service charges] is an open and potentially important one for Colorado law." ECF No. 36 at 11.

Moreover, successful litigation of the state wage and hour claims in this case required both a knowledge of applicable case law, statutes, and regulations, and expertise in litigating cases under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b). Accordingly, the second *Johnson* factor supports Class Counsel's fees. *See Shaw*, 2015 WL 1867861, at *5 (upholding fee award where case "required not only extensive knowledge of applicable

caselaw, statutes, and regulations, but also insight on successfully litigating cases under Fed.R.Civ.P. 23 and the FLSA").

### 3.    THE SKILL REQUISITE TO PERFOM THE LEGAL SERIVCE PROPERLY

Wage and hour issues "are governed by highly technical state and federal wage statutes and regulations." *Shaw*, 2015 WL 1867861, at *6. As explained in the attached Declaration of David Miller and as demonstrated by the resume attached thereto, Class Counsel's practice is focused on wage and hour collective and class actions, and Mr. Miller has been involved in over 30 such cases. *See* nt. 4, p.15, *supra*; *see also* Exs. 4 and 5. Because Class Counsel had the requisite skill to perform the legal services required, the third factor supports their request for fees. *See Shaw*, 2015 WL 1867861, at *6.

### 4.    THE PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEY DUE TO ACCEPTANCE OF THE CASE

Class actions, and particularly class actions brought on a contingency basis, include "an inherent preclusion of other work." *Shaw*, 2015 WL 1867861, at *6. By taking this case, Class Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingency fee rather than strictly working on paid hourly wages." *Whittington v. Taco Bell of America, Inc.*, 2013 WL 6022972 at *6 (D. Colo. Nov 13, 2013). Additionally, while the Sawaya & Miller Law Firm has more than 20 attorneys and 80 supporting staff, the wage and hour division that performed the work on this case consisted of only three attorneys and one paralegal. As such, the fourth *Johnson* factor supports Class Counsel's request for fees.

### 5.    THE CUSTOMARY FEE

"The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken*, 2010 WL 5387559 at *6. "[C]ourts have similarly recognized that '[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created' and that fees within this range are 'presumptively reasonable.'" *Shaw*, 2015 WL 1867861, at *6 (citing *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) and *Vaszlavik*, 2000 WL 1268824 at *4. In this case, the 33% contingency fee sought by Class Counsel is on the low end of the normal range. As such, the fifth factor supports Class Counsel's request for fees.

### 6.    WHETHER THE FEE IS FIXED OR CONTINGENT

Class Counsel pursued this case based on contingent fee agreements and thus would have recovered nothing if the Plaintiff had not prevailed. *See* Ex. 2 at ¶ 10. "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee." *Vaszlavik*, 2000 WL 1268824 at *6.

### 7.    TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES

This fact is not a relevant consideration in this case.

### 8.    THE AMOUNT INVOLVED AND THE RESULTS OBTAINED

This case resulted in a Settlement that provides each Class Member with approximately 56 cents per hour worked for all time the Plaintiff alleged that he and the Class Members were improperly paid. Given the significant risk that the Plaintiff and the Class would recover nothing, this result justifies the requested fee. *Vaszlavik*, 2000 WL 1268824 at *6.

9.    **THE EXPERIENCE, REPUTATION, AND ABILITY OF THE ATTORNEYS**

The lead counsel for the Class, David H. Miller, is a highly experienced employment attorney with decades of experience in class actions. Ex. 2, *passim*; Ex. 3 at ¶¶ 8-9; Mr. Miller previously led a private non-profit and a state agency's legal enforcement organization, and has been in charge of the legal employment litigation division of one of Colorado's largest private employers, where his main activity was the defense of wage and hour class actions. Ex. 5. In total, Mr. Miller has litigated over 30 lawsuits similar to this action. For nearly five years, Mr. Miller supervised the work of associate Mr. Harrison, who has eleven years of experience, and who had dedicated his practice to wage and hour class actions since joining Sawaya & Miller in November 2016. *See* Ex. 2. Thus, the experience, reputation, and ability of Class Counsel support their request for fees.

10.    **THE UNDESIRABILITY OF THE CASE**

Plaintiff and the Class Members are service employees whose hourly wages are at or below the minimum wage and who often lack records of their wages from previous years. The primary issue in this case dealt with whether the Westin DIA unlawfully retained tips and as such failed to pay minimum wage. The factual and legal challenges in this case could reasonably have led an attorney to decline representation. Moreover, by taking this case on a contingency basis, Class Counsel took a significant risk that they might not obtain any compensation. *See Vaszlavik*, 2000 WL 1268824 at *6. As such, the tenth *Johnson* factor supports Class Counsel's request for fees.

11.    **THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHP WITH THE CLIENT**

"Unlike corporate clients, who may need future legal services from their counsel, the likelihood that many class members will be seeking additional representation from Class Counsel is slim." *Shaw*, 2015 WL 1867861, at *7. Moreover, wage claims like the claims of Plaintiffs and Class Members in this case "do not lend themselves to continuous, long-term attorney-client relationships." This factor therefore weighs in favor of Class Counsel's fees. *See id.*

12.    **AWARDS IN SIMILAR CASES**

As explained above, the fees requested by class counsel—33 percent of the common fund established by the Settlement—is slightly less than the customary 1/3 charged by attorneys in contingency-fee class actions. The twelfth *Johnson* factor therefore supports Class Counsel's request for attorneys' fees.

Because the "common fund" approach, the "lodestar" approach, and all of the *Johnson* factors weigh in favor of granting Class Counsel's request for fees, the undersigned respectfully ask the Court to approve their reasonable attorneys' fees of $15,675.00.

VI.    **THE PLAINTIFF'S COSTS ARE REASONABLE AND SHOULD BE APPROVED**

Plaintiffs in fee-shifting cases are entitled to attorneys' fees and costs if they "succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 444 (1983). The Plaintiffs' and the Class Members' primary claims in this case were brought under the Colorado Wage Act, which provides

that "if . . . the employee recovers a sum greater than the amount tendered by the employer the court may award the employee reasonable costs and attorney fees incurred in such action." C.R.S. § 8-4-110(1).

Barlow prevailed in this action by obtaining a settlement of $47,500.00 for the class, which will provide each Class Member with approximately 56 cents for every hour worked for the Defendants during the class period. Accordingly, Class Counsel's costs are $1,947.00, however, Class Counsel agreed to include compensation for this amount in the $15,675.00 requested for fees. *See* Exhibit 4: Sawaya Billing Records. As Class Counsel is entitled to costs, and the $15,675.00 is reasonable compensation for attorney's fees alone, Class Counsel's request for $15,675.00 for fees and costs is reasonable. Therefore, the undersigned respectfully ask the Court to approve their costs, included in their request for attorneys' fees of $15,675.00.

## VII.    THE COSTS OF ADMINISTRATION SHOULD BE APRROVED

A provision requiring the settling defendants to fund a third-party class administrator is typical in class action settlements. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (approving administrator for settlement notice and distribution). Depending on the nature of the case and the terms of the settlement, those administrative expenses may be very high. *See, e.g., Barr v. Qwest Commc'ns Co., LLC*, 1:01-CV-00748- WYD, 2013 WL 141565, at *3 (D. Colo. Jan. 11, 2013) (administrative costs estimated at $926,000 for over 9,400 Class Members); *Whittington v. Taco Bell of Am., Inc.*, 10-cv-01884- KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (administrative costs of $85,000.00). The court, in its discretion, defines the duties of the Administrator, subject to the court's equitable and Rule 23 powers. *See Horton v.*

*Leading Edge Mktg. Inc.*, 04-CV-00212-PSF- CBS, 2007 WL 2472046, at *6 (D. Colo. Aug. 28, 2007) (Approving third party administrator with specified duties).

In this case, the parties agreed to Rust Consulting, Inc. as the Settlement Administrator. See ECF No. 51-1 at 5. Rust's duties included, and will include: (1) mailing the Notice (ECF No. 51-4) and Opt-out Form (ECF No. 51-5) to the Class members; (2) updating the addresses of Class members whose Notice Forms are returned as undeliverable and re-sending the Notice Forms; and (3) confirming that settlement payments were timely mailed to Class members. ECF No. 51 at 7–9. Rust fully and properly executed its duties related to Notice, and has committed to disseminating the Settlement payments as required by the Settlement Agreement and any order of this Court. Ex. 1. Accordingly, the modest settlement administration costs of $6,831.00 as outlined in Rust's declaration and pursuant to the Settlement Agreement should be approved.

## **CONCLUSION**

WHEREFORE, the Plaintiff and the Defendant jointly move the Court to grant final approval of the Settlement Class, grant final approval of the Parties' Settlement, inclusive of the Service Award to Barlow, Attorneys' Fees and Costs to Class Counsel, and the cost of administration, and authorize the Settlement Administrator to distribute the Class Settlement Amount in accordance with the Settlement Agreement. A proposed order is attached.

Respectfully submitted on this 3rd day of March, 2022.

*/s/ David H. Miller*
_____
David H. Miller
Victoria E. Guzman
THE SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
303.839.1650  x 1090
dhmiller@sawayalaw.com
vguzman@sawayalaw.com
*Counsel for the Plaintiff*

*/s/ Steven Gutierrez*
_____
Steven Gutierrez
HOLLAND & HART, LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
303.295.8121
sguitierrez@hollandhart.com
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of March, 2022, I electronically filed the foregoing Motion through the CM/ECF System, generating a true and accurate copy of this document to all counsel of record.

*/s/ Leroy Moya*
_____
Leroy Moya